**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| JORGE C. ZAMORA-QUEZADA, M.D., | § | |
| M.P.H., P.A, | § | CASE NO. 16-70270 |
| | § | |
| Debtor. | § | |

**THE TRUSTEE'S AND HITACHI MEDICAL SYSTEMS AMERICA, INC.'S SUPPLEMENTAL RESPONSE IN OBJECTION TO DEBTOR'S SECOND MOTION TO CONVERT CHAPTER 7 CASE TO CHAPTER 11**

Hitachi Medical Systems America, Inc. ("HMSA") and Michael B. Schmidt, the duly appointed Chapter 7 Trustee in this case (the "Trustee"), submit this Supplemental Response in Objection to Debtor's Motion to Convert Chapter 7 Case to Chapter 11 Case (ECF No. 90) (the "Motion to Convert"), and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. On October 10, 2016, Jorge C. Zamora-Quezada, M.D., M.P.H., P.A. (the "Debtor") filed its Second Motion to Convert Chapter 7 Case to Chapter 11 Case (ECF 90).

2. On October 25, 2016, the Trustee filed his Response to Motion to Convert to Chapter 11 (ECF No. 96).

3. On November 1, 2016, HMSA filed its Response in Objection to Debtor's Second Motion to Convert Chapter 7 Case to Chapter 11 And Joinder In Chapter 7 Trustee's Response (ECF 99).

4. Since then, HMSA and the Trustee have engaged in limited discovery of the Debtor's assets and financial activities. This discovery revealed that the Debtor, and its principal, Dr. Zamora, engaged in a complex scheme to fraudulently transfer potentially up to

$10 million from the Debtor to Dr. Zamora, Dr. Zamora's family, and the several entities controlled by Dr. Zamora[1] in the last four years prior to filing this bankruptcy proceeding. In perpetrating this scheme, Dr. Zamora rendered the Debtor undercapitalized, insolvent, and breached his fiduciary duties to the Debtor. This scheme culminated two months prior to the bankruptcy filing with Dr. Zamora ceasing all the Debtor's operations then transferring—without any compensation to the Debtor—all the assets, operations, and revenue of the Debtor to a new entity controlled by Dr. Zamora that now conducts the exact same business from the same buildings, with the same employees, using the same equipment, and with the same name as the Debtor.

5. Following discovery of this scheme, on January 25, 2017, HMSA and the Trustee jointly filed an adversary action against Dr. Zamora, several members of his family, and several entities controlled by Dr. Zamora to avoid and recover these preferential and/or fraudulent transfers, as well as recover damages to the estate for Dr. Zamora's breaches of fiduciary duty resulting from this scheme. *See* Trustee and HMSA Compl. (Adv. Case, No. 17-07002, ECF 1). Based on the Debtor's fraudulent scheme and use of the Debtor as his alter ego and effectively his personal bank account, HMSA and the Trustee further seek to pierce the corporate veil and hold Dr. Zamora liable for the Debtor's Debts. *See id.*

6. HMSA and the Trustee, therefore, file this supplement in response to the Debtor's Motion to Convert to inform the Court of its new adversary action and the facts on which it is based, which should inform this Court's decision on the Debtor's Motion to Convert. These facts further highlight the Debtor's and Dr. Zamora's bad faith conduct, which dictate against the

---

[1] The named defendants in the Adversary Action that were used by Dr. Zamora in this fraudulent scheme include several entities controlled by Dr. Zamora: the J&M Family LP (the "J&M FLP"), the JCZQ Family LP (the "JCZQ FLP"), Alpha-Omega Management LLC; the Center for Arthritis & Osteoporosis I, PA (the "Center PA"); and Zamora-Quezada Inc. These entities are collectively referred to as the "Zamora Entities."

Debtor being permitted to convert its case to Chapter 11, and Dr. Zamora being placed back in control of the Debtor.

## BACKGROUND

7. As detailed in HMSA's original Response to the Debtor's Motion to Convert, HMSA and the Debtor have been engaged in litigation over HMSA's claim since March 2011, in which the Debtor, through its principal, Dr. Zamora, engaged in various frivolous delay tactics ultimately resulting in death penalty sanctions against the Debtor. *See* HMSA's Resp. in Obj. to Debtor's Second Motion to Convert (ECF 99). HMSA and the Trustee have now discovered that during that lengthy litigation, Dr. Zamora, the Debtor's sole member and officer, engaged in a complex scheme to undercapitalize the Debtor, render the Debtor insolvent, and fraudulently transfer millions of dollars to Dr. Zamora, his family, and the Zamora Entities.

8. As part of that scheme, Dr. Zamora, consistently siphoned funds from the Debtor for personal expenses and expenses of the Zamora Entities while its litigation was pending. In just the year immediately prior to the Petition Date, Dr. Zamora transferred more than $3 million for his personal expenses and expenses of the Zamora Entities. *See* Am. Statement of Financial Affairs at 36-54 (the "Amended SOFA") (ECF No. 93). Dr. Zamora admits that these funds were used to pay his personal expenses. *See* Ex. A, Zamora Dep. Tr. 29:18- 30:16. Dr. Zamora further admits that these insider transfers and personal expenditures began well before this one year period and continued throughout the period in which the Debtor was involved in litigation with HMSA. *See id.* There is no indication that the Debtor received any compensation for these transfers. The limited discovery thus far indicates that these transfers add up to several million dollars, but HMSA and the Trustee require additional discovery to determine a precise amount.

9. Once HMSA's claim was reduced to a judgment and domesticated in Texas in

March 2016, however, Dr. Zamora's efforts to defeat the rights of its creditors intensified. On October 20, 2015, HMSA obtained a judgment against Dr. Zamora awarding HMSA in excess of $1 million including interests and attorneys' fees—the judgment forming the basis of HMSA's claim in this proceeding. *See* Ex. B, Notice of Filing of Proof of J., at 4-5, *Hitachi Med. Sys. Am., Inc. v. JCZQ Family L.P.*, No. CL-16-0899-E (Co. Ct. at Law No. 7, Hidalgo County, Tex. Mar. 3, 2016). HMSA domesticated that judgment in Texas on March 3, 2016, and began collection efforts. *See id.* at 1.

10. In April 2016, the Debtor conferred with counsel on "how to handle the collection efforts by [HMSA]." *See* Ex. C, Grissom Emails at 3. The Debtor ultimately decided on a plan in which it would (1) cease doing business, (2) transfer substantially all the Debtor's assets from the Debtor to other entities controlled by the Debtor, (3) transfer the Debtor's medical practice and business operations to the Center PA, and (4) assign receivables for all further work at the Debtor's clinics to the Center PA. *See id.* Following completion of these transfers, the Debtor would file Chapter 7 bankruptcy. *See id.* Debtor's former counsel explained that this would stop execution of the judgment without need for an appellate bond. *See id.* Debtor's former counsel further explained that the purpose of this plan was to ensure that "Hitachi's judgment winds up with zippo value." *Id.* Dr. Zamora immediately began efforts to commence this plan.

11. In June 2016, Dr. Zamora ceased all the Debtor's operations, and transferred the operations and medical practice generating the Debtor's receivables to the Center PA. *See* Ex. D, Am. SOFA at 27. Dr. Zamora also obtained new Medicare and Medicaid numbers for the new entity, and directed health insurance companies that paid for services provided to the Debtor's patients to begin depositing payment at new accounts for the Center PA. Ex. A, Zamora Dep. Tr. 20:25-22:1. At that time, the Center PA began conducting all the business

operations previously conducted by the Debtor.  *See* Ex. A, Zamora Dep. Tr. 19:5- 19:17.

12. The Center PA conducts that business in the same physical location as the Debtor, uses the same employees as the Debtor, provides the same medical services as the Debtor, uses the same patient list as the Debtor, uses the same phone number as the Debtor, and even uses the same name as the Debtor.  *See* Ex. A, Zamora Dep. Tr. 19:5-9, 124:11-125:4.  The Debtor received no compensation for the transfer of the medical practice, its goodwill, and these intangible assets to the Center PA.  Ex. A, Zamora Dep. Tr. 125:10-15.

13. The Debtor also transferred all of its physical assets to the Zamora Entities in May 2016.  In May 2016, the Debtor's accountant presented Dr. Zamora with a 2015 year end financial statement that—like the financial statements for the two previous years—listed fixed assets and equipment of the Debtor with minimum book value of at least $480,012.  *See* Ex. E, 2015 Financial Statement at 3.  After Dr. Zamora reviewed this financial statement, he met with his accountant, and directed her to remove these assets from the Debtor's books, contending that the Debtor never owned these assets.  *See* Ex. F, J. Smith Dep. Tr. 23:7-25:19.

14. Less than two months after these transactions, June 30, 2016, (the "Petition Date") pursuant to the Debtor's plan to ensure that "Hitachi's judgment winds up with zippo value," the Debtor filed this Chapter 7 bankruptcy.  *See* Ex. G, Petition (ECF 1).  After the Trustee did not assent to the Debtor's plan and began pursuing an adversary action to claw back some of the fraudulently transferred funds, the Debtor moved to convert to Chapter 11 in order to retake control of the Debtor and see its fraudulent plan through.

**SUPPLEMENTAL RESPONSE IN OBJECTION TO MOTION TO CONVERT**

**A.     The Debtor Is No Longer A Going Concern Entitled To Chapter 11 Protections**

15. First, as a result of the transfers described above, the Debtor is now a defunct entity, and therefore is not a proper debtor to avail itself of a Chapter 11 bankruptcy.  Chapter 11

is not proper for a debtor if "there is no going concern to preserve, there are no employees to protect, and there is no longer hope of rehabilitation." *See Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986) ("[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre* . . . ." (citations and quotations omitted)).

16. The Debtor has ceased operations. *See* Ex. A, Zamora Dep. Tr. 19:5- 19:17. The Debtor no longer has any employees. The Debtor no longer has any revenue. The Debtor has just $17,188.49 in assets. *See* Ex. D, Am. SOFA at 2 (ECF No. 93). All of the Debtor's assets, both tangible and intangible, have been transferred to and are now used in the medical practice of Dr. Zamora's new entity, the Center PA. The Debtor is therefore not a going concern qualified to avail itself of Chapter 11. *See Matter of Little Creek Dev. Co.*, 779 F.2d at 1073.

17. For this reason alone, the Debtor's Motion to Convert should be denied.

**B.     The Debtor's Bad Faith Purpose In Entering Bankruptcy**

18. Furthermore, the Debtor's scheme to defraud its creditors—included in a documented, premeditated plan resulting in this bankruptcy—amounts to the worst kind of bad faith conduct and abuse of the bankruptcy process that should prohibit the Debtor from converting to Chapter 11.

19. "The purpose of the Bankruptcy Code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process to avoid paying their debts." *In re Thalmann*, 469 B.R. 677, 681 (Bankr. S.D. Tex. 2012). In furtherance of this purpose, the bankruptcy courts may exercise their equitable discretion and deny a request to convert to Chapter 11 if the debtor has engaged in bad faith conduct or abuse of the legal or bankruptcy process. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 372-73 (2007).

20. HMSA has already detailed at length the Debtor's bad faith conduct throughout its litigation with HMSA in its original response to the Debtor's Motion to Convert. But HMSA and the Trustee request that this Court take notice of the Debtor's recently discovered premeditated plan to drain the assets of the Debtor just prior to filing Chapter 7.

21. Dr. Zamora consented to this plan, and then made substantial efforts to enact this plan. Dr. Zamora transferred both its tangible and intangible assets and its operations to the control of the Center PA. *See, e.g.*, Ex. A, Zamora Dep. Tr. 19:5- 19:17. Dr. Zamora obtained new Medicare and Medicaid numbers and redirected insurance payments to the Center PA. Ex. A, Zamora Dep. Tr. 20:25-22:1. This conduct is simply not the conduct of "honest but unfortunate debtor," but an intentional effort to "abuse the bankruptcy process to avoid paying [its] debts." *See In re Thalmann*, 469 B.R. at 681.

C. **The Debtor Continues To Attempt To Mislead Its Creditors And The Court About Its Financial Affairs**

22. The Debtor has continued its attempts to mislead its creditors and this Court about its financial affairs in its attempt to fulfill its plan. Attempts to conceal assets and filing "misleading or inaccurate" schedules indicate bad faith and that a debtor's motion to convert should be denied. *See Marrama*, 549 U.S. at 371. And attempts to amend bankruptcy schedules to correct inaccuracies do not absolve a debtor of this bad faith conduct. *See In re Henley*, 480 B.R. 708, 795 (Bankr. S.D. Tex. 2012). Rather, amending schedules to disclose insider transfers only after being confronted with evidence of inaccuracies only further shows that the original schedules were filed in bad faith. *See id.*; *In re Gartner*, 326 B.R. 357, 375 (Bankr. S.D. Tex. 2005) ("The decision to amend the Schedules only after untruths are uncovered is evidence of fraudulent intent.").

23. It is undisputed that the Debtor's original bankruptcy schedules were grossly

inaccurate. They listed no transfers to insiders or affiliates in the year prior to the Petition Date. Voluntary Pet. for Bankr. at 25 (ECF No. 1). And listed no revenue for the Debtor in 2016. *Id.* The Trustee subsequently identified evidence of more than $700,000 in fraudulent transfers, and brought an adversary action against the Debtor. *See* Trustee's Compl. ¶¶ 6-7 (ECF No. 12). After being confronted with the evidence of more than $700,000 in fraudulent transfers, the Debtor filed an Amended SOFA, disclosing $3 million in transfers to insiders in the year prior to the Petition Date, and listing more than $2 million in revenue for the first half of 2016 prior to the Petition Date. *See* Ex. D, Am. SOFA (ECF No. 93). The Debtor's decision to amend its schedules only after its original untruths were uncovered only further emphasizes the Debtor's fraudulent intent to use this bankruptcy merely as a shield against its legitimate creditors. *See In re Henley*, 480 B.R. at 795; *In re Gartner*, 326 B.R. at 375.

24. Even after amending its SOFA, further discovery indicates that the Amended SOFA still contains inaccurate and misleading information, and Dr. Zamora is more than willing to make false statements and attempt to mislead the Debtor's creditors about its financial affairs.

25. For example, while the Debtor's acts to transfer the business of the Debtor to a new entity just two months prior to filing for bankruptcy is in itself bad faith, the Debtor has now attempted to mislead this Court and its creditors about the nature of these transfers. The Debtor's Amended SOFA discloses the transfer of the "Medical Practice"—the intangible assets of the Debtor—a business that had generated more than $2 million in the six months prior to bankruptcy—with a value of "$0.00." *See* Ex. D, Am. SOFA at 27. But the Debtor's valuation contradicts previous valuations by the Debtor as well as established law in this Court for valuating a Debtor's intangible assets. In 2013, 2014, and 2015, the Debtor listed the intangible assets of the Debtor as valued at approximately $126,000 for purposes of its federal tax returns.

*See* Ex. H, 2015 Tax Return at 4; Ex. I, 2014 Tax Return at 4; Ex. J, 2013 Tax Return at 2. It is unclear why they are now valueless.

26. It is particularly baffling since the Center PA now uses these same purportedly valueless intangible assets—the same patient list, addresses, phone numbers, employees, and name—to generate revenue at what is likely the same rate. *See* Ex. A, Zamora Dep. Tr. 19:5-9, 124:11-125:4. But this Court has addressed this issue, and held that the continued use of intangible assets indicates that those assets are not in fact valueless. *In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 667 (Bankr. S.D. Tex. 2009) (avoiding transfer of intangible assets to entity controlled by insider, finding that continued use of intangible assets by transferee indicated those assets had value for which the transferor debtor should have been compensated).

27. The Debtor's principal, Dr. Zamora, is also unable to explain the transfer of substantially all the physical assets of the Debtor just two months prior to the Petition Date. Dr. Zamora apparently contends that the Debtor never owned any equipment and thus never transferred any equipment. *See* Ex. A, Zamora Dep. Tr. 38:3-19; 126:17-127:1. But the Debtor's financial statements directly contradict Dr. Zamora's position. The Debtor's 2013, 2014, and 2015, year-end financial statements each show that the Debtor held equipment and assets with minimum book values accounting for accelerated depreciation of $583,244, $462,670, and $480,012, respectively. *See* Ex. K, 2013 Financial Statement at 3; Ex. L, 2014 Financial Statement at 3; Ex. E, 2015 Financial Statement at 3. And in fact, these assets appear on the Debtor's financial statement presented to the Debtor in May 2016. *See* Ex. E, 2015 Financial Statement at 3. It was only after Dr. Zamora began his plan to fully deplete the assets of the Debtor in May 2016 that he directed the accountant to remove these assets from the Debtor's books.

28. In addition to the inaccurate valuation of the business transferred just prior to bankruptcy, Dr. Zamora also continues to make inaccurate statements and mislead the Debtor's creditors about the Debtor's financial affairs with regard to its fraudulent transfers. For example, Dr. Zamora testified that a $100,000 payment by the Debtor on behalf of Alpha-Omega Management, LLC, another entity controlled by Dr. Zamora, was the result of a settlement to which the Debtor was a co-defendant and jointly liable. *See* Ex. A, Zamora Dep. Tr. at 45:18-46:4. Yet this, too, is demonstrably false. The payment was for a settlement in the case of *Corral v. Alpha-Omega Management, LLC*, No. 7:12-cv-00350 (S.D. Tex. 2012), in which the Debtor was never a party and never appeared. *See* Ex. M, Corral Docket.

29. The Debtor's continued inability to accurately answer questions about its financial affairs and provide accurate bankruptcy schedules indicate that the Debtor is a bad faith debtor and not entitled to convert its bankruptcy case to Chapter 11.

**D.   The Debtor's Principal, Dr. Zamora Breached His Fiduciary Duties To The Debtor And Is Not Entitled To Be Placed In A Position To Do So Again**

30. Finally, the Debtor's principal, Dr. Zamora, has shown that he is unable to faithfully exercise the duties of a fiduciary to the Debtor. A debtor in possession under Chapter 11 assumes the same fiduciary duties as a Chapter 7 Trustee. *See In re Houston Reg'l Sports Network, L.P.*, 505 B.R. 468, 481 (Bankr. S.D. Tex. 2014). "A sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession . . . , who are responsible for managing the debtor's estate in the best interest of creditors." *In re Southmark Corp.*, 163 F.3d 925, 931 (5th Cir. 1999). Under *Marrama*, a debtor is not entitled to convert to Chapter 11 and become a debtor in possession if the debtor has demonstrated that it is not fit to exercise these fiduciary duties. *Dan Thomason & Assocs., LLC v. Breakwell*, No. 3:10-CV-00379-K, 2010 WL 3385025, at *2 (N.D. Tex. Aug. 25,

2010).

31. Yet in conducting the scheme outlined above to defraud the Debtor's creditors, Dr. Zamora has continually breached his fiduciary duty to the Debtor and is no position to manage the Debtor's estate in the best interest of creditors. *See In re Southmark Corp.*, 163 F.3d at 931. As the sole officer of an admittedly insolvent entity from at least 2014 to the Petition Date, *see* Ex. A, Zamora Dep. Tr. 22:7-12, Dr. Zamora had a fiduciary duty to the Debtor and its creditors to preserve the value of corporate assets to pay corporate debts. *See Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 534, n. 24 (5th Cir. 2004). Yet during this time, Dr. Zamora misappropriated millions of dollars from the Debtor for himself, his family, and the Zamora Entities under his control, as described above and in detail in the recent adversary complaint. *See* Trustee and HMSA Compl. (Adv. Case, No. 17-07002, ECF 1).

32. The Debtor further engaged in sham loans intended to undercapitalize and render insolvent the Debtor—while he knew that the Debtor had ongoing litigation with HMSA for which it would potentially be liable. Under Texas law, an owner may undercapitalize a corporation by advancing personal loans to an insolvent corporation—and it breaches its fiduciary duty to that corporation and its creditors if it subsequently uses corporate funds for its personal expenses. *Tigrett v. Pointer*, 580 S.W.2d 375, 381–82 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.). Dr. Zamora and his wife created large debts on the Debtor's books by purporting to loan the Debtor funds. Any funds from these loans were simply funneled back to Dr. Zamora, his family, and the Zamora Entities through the transfers described above.

33. The loans were made at above-market interest rates—13%—without any consideration as to the proper interest rate. *See* Ex. A, Zamora Tr. 77:15- 79:15. And as Dr. Zamora admits, the Debtor never made any payments on these purported loans. *Id.* Instead, the

loans became an ever-growing personal asset of Dr. Zamora and his wife with interest continually accruing on a balance against which no payments were ever made. Dr. Zamora therefore benefited doubly from these self-interested transactions, as he gained an ever-growing asset, but was able to continue to use the purported loaned funds for his personal expenses and the expenses of the Zamora Entities. Such conduct amounts to a breach of fiduciary duty under Texas law. *See Tigrett*, 580 S.W.2d at 381–82.

34. Finally, by transferring substantially all of the Debtor's assets and operations to entities that he controlled just months before filing this bankruptcy, he further breached his fiduciary duty by misappropriating the business opportunities of the Debtor. *See In re Advanced Modular Power Sys., Inc.*, 413 B.R. at 673. In *In re Advanced Modular Power Systems*, in the two years prior to filing bankruptcy, the debtor created an entity virtually identical to the debtor entity and began performing the same business using the same "telephone number, name, acronym, customer information, address, vendor information, and competitive advantages in the forms of goodwill and specialized knowledge" as the debtor. *Id.* Based on this conduct, the bankruptcy court held that the debtor's principal had not only fraudulently transferred the intangible assets of the debtor, but had breached his fiduciary duties to and usurped the business opportunities of the debtor. *Id.* at 681.

35. Precisely the same circumstances exist here. Just months before the Debtor filed for bankruptcy, Dr. Zamora transferred substantially all of its assets to the Zamora Entities for use by the Center PA, which was wholly owned and controlled by Dr. Zamora. The Center PA then began operating the same business and medical practice that the Debtor previously operated. It used the same address, patient list, phone number, and name—and thus the competitive advantages of the debtor in the form of goodwill and specialized knowledge as the Debtor. *See*

Ex. A, Zamora Dep. Tr. 19:5-9, 124:11- 125:4.  The Debtor received no compensation for this transfer.  *See id.* at 125:10-15.  Like in *In re Advanced Modular Power Systems*, this transfer constitutes a usurpation of the Debtor's business opportunities and a breach of fiduciary duty. *See In re Advanced Modular Power Sys., Inc.*, 413 B.R. at 673.

36. Dr. Zamora has therefore already shown that he is incapable of managing the Debtor in the best interests of its creditors and incapable of abiding by his fiduciary duties to the Debtor or its creditors.  Accordingly, Dr. Zamora should not be placed in a further fiduciary role as a debtor in possession under Chapter 11, and the Debtor's Motion to Convert should be denied.  *See In re Southmark Corp.*, 163 F.3d at 931.

## CONCLUSION

WHEREFORE, HMSA and the Trustee respectfully request that this Court enter an order (i) denying the Debtor's Motion to Convert; and (ii) granting such other and further relief consistent with the foregoing, HMSA's Response, and the Trustee's Response as this Court deems just and proper.

| | |
|---|---|
| Respectfully submitted, | Dated: January 27, 2017 |

| | |
|---|---|
| Law Offices of Michael B. Schmidt | MORGAN, LEWIS & BOCKIUS LLP |
| */s/ Michael B. Schmidt*  <br>Michael B. Schmidt <br>Texas Bar No. 17775200 <br>Fed. I.D. No. 10260 <br>401 Grant Pl. <br>Corpus Christi, TX 78411 <br>Telephone: 361.884.9949 <br>Facsimile: 361.884.6000 <br>m_schmid@swbell.net <br><br>ATTORNEY FOR TRUSTEE | */s/ Craig A. Stanfield*  <br>Craig A. Stanfield <br>Texas Bar No. 24051371 <br>Fed. I.D. No. 789722 <br>I. Clay Rogers <br>Texas Bar No. 17172150 <br>Fed. I.D. No. 13264 <br>Chad E. Stewart <br>Texas Bar No. 24083906 <br>Fed. I.D. No. 2868363 <br>Crystal R. Axelrod <br>Texas Bar No. 24078170 <br>Fed. I.D. No. 1654454 <br>1000 Louisiana Street, Suite 4000 <br>Houston, TX 77002 <br>Telephone: 713.890.5000 <br>Facsimile: 713.890.5001 <br>craig.stanfield@morganlewis.com <br>clay.rogers@morganlewis.com <br>chad.stewart@morganlewis.com <br>crystal.axelrod@morganlewis.com <br><br>– and – <br><br>Paul R. Wilson <br>PRWilson Law Firm, P.C. <br>Texas Bar No. 21707300 <br>Fed I.D. No. 14676 <br>Wilson Professional Building <br>323 W. Cano, 2nd Floor <br>Edinburg, TX  78539 <br>Telephone: (956) 316-0545, ext. 303 <br>Facsimile: (956) 316-0747 <br>paul@wilsonlawfirm.net <br><br>ATTORNEYS FOR HITACHI MEDICAL SYSTEMS AMERICA, INC. |

## **CERTIFICATE OF SERVICE**

I certify that, on January 27, 2017, I caused a true copy of the foregoing document to be served via CM/ECF on the Debtor, its counsel, and all other parties in interest who receive service via electronic case filing.

*/s/ Craig A. Stanfield*
Craig A. Stanfield
